IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER SHAWN BRYSON,

            Petitioner,

vs.

RON RACKLEY,[1] Warden (A), Deuel
Vocational Institution,

            Respondent.

No. 2:11-cv-01641-JKS

MEMORANDUM DECISION

Christopher Shawn Bryson, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Bryson is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Deuel Vocational Institution. Respondent has answered and Bryson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Bryson was convicted in the Yolo County Superior Court of two counts of assault with the intent to commit rape during a burglary (Cal. Penal Code § 200(b)), two counts of first degree burglary (Cal. Penal Code §§ 459, 460), and counts of evading a police officer with reckless driving (Cal. Vehicle Code § 2800.2(a)), possession of cocaine for sale (Cal. Health & Safety Code §  11351(a)), transportation of cocaine (Cal. Health & Safety Code § 11352(a)), misdemeanor possession of a controlled substance without a prescription (Cal. Business & Professions Code § 4060), misdemeanor transportation of less than 28.5 grams of marijuana (Cal. Health & Safety Code § 11360(b)), and receiving stolen property (Cal. Penal

---

[1] Ron Rackley, Warden (A), Deuel Vocational Institution, is substituted for Kathleen Dickinson, Warden, California Medical Facility, Vacaville.  Fed. R. Civ. P. 25(b).

Code § 496(a).  In February 2008 the trial court sentenced Bryson to a prison term of fourteen

years to life, plus a consecutive term of six years and four months.  The California Court of

Appeal, Third Appellate District, reversed as to the two burglary counts, and affirmed Bryson's

conviction and sentence in all other respects in an unpublished decision.[2]  The California

Supreme Court denied review on July 8, 2009, and rehearing on February 4, 2011.  On

December 30, 2009, Bryson filed a petition for habeas relief in the Yolo County Superior Court.

After appointing counsel, the Yolo County Superior Court denied relief in a reasoned decision.

The California Court of Appeal summarily denied Bryson's petition for habeas relief to that court

without opinion or citation to authority, and the California Supreme Court denied review on

February 2, 2011.  Bryson timely filed his Petition for relief in this Court on June 15, 2011.

     The facts underlying Bryson's conviction as recited by the California Court of Appeal:

*Prosecution Case-In-Chief*
*Counts 1 and 2: Burglary and Assault*
     In August 2007, K.M. was a student at U.C. Davis and was living in an apartment in the 1400 block of H Street in Davis.  She lived with two roommates.
     On August 31, 2007, K.M. went out to dinner and returned to her apartment at around 10:00 p.m.  One roommate was also home that evening.  At 10:30 p.m., K.M. went to bed, sleeping without clothing.  Her bedroom window was slightly open.
     At 5:55 a.m. on September 1, 2007, K.M. awoke because it was light in her room.  She fell asleep again and, when she next awoke, she saw [Bryson] standing next to her.
     K.M., who was sleeping on her stomach, saw that [Bryson] had one hand on her bed and the other hand on the far side of her body, "making a bridge over" her.  She quickly rolled over onto her back.  [Bryson] jumped on top of her and straddled her waist, holding her arms down.  Then he said, "Shhh, be quiet."  K.M. yelled, "Help, someone is in the house," and she punched and kicked [Bryson].  [Bryson] continued to grab K.M. and tried to hold her down.  After a 30-second struggle, she got her knees up and kicked him off the end of the bed.  [Bryson] ran out of the bedroom and K.M. heard the front door slam.  She went to check on her roommate,

---

[2] *People v. Bryson*, No. C058220, 2009 WL 1153273 (Cal. Ct. App. Apr. 29, 2009).

who telephoned 9-1-1.  K.M. suffered bruises on her chest and a bloody foot during the struggle.

Later that day, K.M. rode with police to Knight's Landing to view a suspect. She identified [Bryson] as the man who had attacked her.  At trial, K.M. identified a photograph of her other roommate and some of that roommate's friends.  The photograph, which had been in the roommate's bedroom, was later found in [Bryson's] pocket.

*Counts 8 and 9: Burglary and Assault*

In September 2007, A.N. was a student at U.C. Davis, and was living in an apartment in the 1400 block of F Street in Davis.  She and four other women had recently moved in, but A.N. was the only one home on the morning of September 1, 2007.  Before going to bed the previous evening, A.N. had made sure that the front door and the windows of her bedroom were locked.  She did not know whether the windows of her roommates' bedrooms were locked as well.  A.N. went to bed wearing long pajama pants and a tank top.  Sometime in the early morning, A.N. was awakened by the sound of her bedroom door opening.  She walked out into the hallway and saw [Bryson] walk out of another bedroom.  A.N. thought that [Bryson] was her roommate's friend, so she said "hi" and saw him leave through the front door.  Then she went back to bed.

Around 5:00 a.m., A.N. again was awakened by the sound of someone opening her bedroom door.  The person looked similar to the person she had seen hours earlier.  She asked him if he had gotten the rent check that she had posted on her roommate's door, and he said he had.

As A.N. reached to turn on a light, [Bryson] placed a hand on the clothing that covered her left breast and placed his other hand on the clothing covering her vagina.  He rubbed her private parts for 30 to 40 seconds.  A.N. screamed and [Bryson] ran out of the apartment.

Later, A.N. noticed that her roommate's bedroom window was wide open, the screen was off, and muddy footprints were visible in two bedrooms and the living room.  Her roommate's designer purse was missing from her bedroom.

*Count 11: Receiving Stolen Property*

In August 2007, S.S. was a student at U.C. Davis and was living in a condominium in the 1500 block of Drake Drive in Davis.  She had two housemates, one of whom had yet to move in.

On August 31, 2007, at 7:30 a.m., S.S. left her residence with all the doors and windows locked.  At 11:00 a.m., she returned home and saw that the front door was closed but not locked.  She also noticed muddy footprints all over the carpeting and up the stairs.  She saw that the patio door had been tampered with and the kitchen window was open.  She noticed that her digital camera, her handheld digital device, and $300 cash were missing from the residence.  It appeared that someone had ransacked her closet and dresser drawers.  S.S. did not know [Bryson] and had not given him permission to be in her condominium.

S.S.'s housemate, J.S., testified that her bedroom had also been ransacked. Her scrapbook, containing photographs from four years of high school, was missing.

K.H. was staying at J.S.'s condominium until her new apartment was ready. All of her personal belongings were at the condominium. She noticed that her bank deposit bag-containing her checks, ATM cards, and photographs-was missing from the cabinet in which it had been stored.

At 6:05 a.m. on September 1, 2007, Davis Police Officer Andrew Penrose was sent to the H Street residence to investigate the H Street burglary. As he neared the apartment complex, he saw [Bryson] driving a car. Penrose attempted to make a traffic stop of [Bryson's] car. [Bryson] initially slowed down but then accelerated to high speeds. He traveled on city streets, county roads, an Interstate freeway and a state highway, at speeds up to 130 miles per hour. Eventually [Bryson] drove onto a dead-end street in Knight's Landing and attempted to turn around. Penrose then rammed his car into [Bryson's] car. Penrose arrested [Bryson] and collected his shoes, which had grass and mud on them. In [Bryson's] pants pockets, Penrose found a crumpled-up photograph of five girls in a hot tub. (Count 3.) He also possessed two benzodiazepine pills. (Count 6.)

Sergeant Rod Refredi searched [Bryson's] car. He found cocaine and marijuana. (Counts 4, 5, & 7.) He also found a bank bag with paperwork and an ATM card. There also was a large, oversized white shirt with elbow length sleeves.

Shortly before noon on September 1, 2007, Detective Sergeant Frank Tenedora interviewed [Bryson] at the Davis Police Department. Tenedora advised [Bryson] of his constitutional rights and [Bryson] said he understood them. [Bryson] said also that he lived on Notre Dame Drive and was unemployed. He admitted that he had seen lights on the police cars that had chased him and said he had not pulled over because there were drugs in the car.

When asked about the photograph of the five women in the hot tub, [Bryson] at first claimed not to have any knowledge of the photograph. Then he claimed to know the first names of two of the five women.

Detective Tenedora estimated that the distance between the F Street apartment and the H Street apartment was 20 yards and that the two complexes were connected by a walkway.

At about 7:00 p.m. on September 1, 2007, law enforcement officers searched [Bryson's] apartment on Notre Dame Drive. In the closet, officers found a clear plastic baggie that was later determined to contain 29.25 grams of cocaine. (Count 4.) The closet also contained several photographs of young Asian women.

*Defense Evidence*

[Bryson] testified that on the evening of August 31, 2007, he and a friend went to a bar in Davis. When the bar closed at 2:00 a.m. on September 1, they went to their friend A.J.'s house and stayed until about 4:30 a.m. Shortly thereafter, [Bryson] went to a restaurant where some acquaintances told him that a party was underway near the little league field in Davis. He went to the party and stayed until shortly before 6:00 a.m.

As [Bryson] walked back to his car, two African American males approached him and asked for marijuana. [Bryson] gave them marijuana in exchange for a grey bag that he put in his car. When he got home he emptied out the bag and picked up

4

a photograph, which he crumpled up and put in the center console of the car. [Bryson] then got back in the car and went to see if the party on F Street was still going on.

When [Bryson] got to F Street, he saw police activity, became nervous because of the drugs in his car, and tried to outrun the police.

[Bryson] admitted that the drugs in the car belonged to him.  However, he denied entering the Drake Drive, F Street, or H Street residences.  He did not know how mud got into his car.

[Bryson] presented the testimony of two witnesses who were standing in a park near F Street at about 6:00 a.m. on September 1 when they saw an African American man running or speed walking through the park. One witness testified that he did not know [Bryson] and had never seen him before.[3]

## II.  GROUNDS RAISED/DEFENSES

Bryson raises seven grounds in his Petition.  The first three grounds allege ineffective assistance of counsel on several grounds; the fourth insufficiency of the evidence to support the rape convictions; the fifth and sixth errors in instructing the jury; and the seventh the imposition of an improper sentence.  Respondent does not assert any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[3] *Bryson*, 2009 WL 1153273 at *1-4.

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

5

time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

---

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

and injurious effect or influence in determining the outcome.[11]   Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

> The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.
> Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue
> the writ in cases where there is no possibility fairminded jurists could disagree that
> the state court's decision conflicts with this Court's precedents.  It goes no farther.*
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a substitute for ordinary error
> correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct.
> 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).   As a condition
> for obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.[13]

> In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[14]   State appellate court decisions that summarily affirm a lower court's opinion without

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

explanation are presumed to have adopted the reasoning of the lower court.[15]  This Court gives

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[16]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[17]

This is considered as the functional equivalent of the appeal process.[18]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[19]  This presumption applies to state-trial courts and appellate

courts alike.[20]

---

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[17] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[18] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[19] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[20] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*,

## IV.  DISCUSSION

Grounds 1, 2, and 3:  Ineffective Assistance of Counsel

In his first ground, Bryson contends that counsel failed to fully investigate all available evidence, present scientific evidence, or request expert witness testimony.  In his second ground, Bryson contends that counsel failed to request the retention of an eyewitness and a cross-race misidentification expert.  In his third ground, Bryson contends that counsel failed to seek to exclude contaminated evidence.  The Yolo County Superior Court rejected Bryson's arguments:

> A claim of ineffective assistance of counsel has two components:
> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, the result of which is unreliable.   To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness.  To establish prejudice, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.  (*Williams v. Taylor* (2000) 529 U.S. 362, 390-91.)
> Insofar as the obligation to investigate, [Bryson] must prove that counsel failed to make particular investigations and that the omissions resulted in the denial of or inadequate presentation of a potentially meritorious defense.  In particular, [Bryson] must show counsel knew or should have known that further investigation was necessary and must establish the nature and relevance of the evidence that counsel failed to present or discover.  Finally, it must also be shown that the omission was not attributable to a tactical decision which a reasonably competent, experienced attorney would make.  (*In re Sixto* (1989) 48 Cal.3d 1247, 1257.)
> Courts grant great deference to counsel's tactical decisions.  (*In re Fields* (1990) 51 Cal.3d 1063, 1069-70.)  "[C]ourts should not second-guess reasonable, if difficult tactical decisions in the harsh light of hindsight."  (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)   "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts."  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)  In the usual case, where counsel's trial

290 F.3d 1030, 1035 (9th Cir. 2002))).

9

tactics or strategic decisions for challenged decisions do not appear on the record, a court will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.  (*People v. Fosselman* (1983) 33 Cal.3d 572, 581 [on appeal, a conviction will be reversed on the ground of ineffective assistance of counsel "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission"].)  Moreover, "claims that the case might have been handled more effectively or that the attorney's tactics were poor are insufficient to show ineffectiveness of counsel."  (*People v. Colligan* (1979) 91 Cal. App. 3d 846, 851.)

[Bryson] fails to demonstrate that counsel's representation fell below an objective standard of reasonableness, and that any deficiency, if there was such a deficiency, prejudicial to him.[21]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Bryson must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[22]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[23]  Bryson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[24]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[25]  In applying this standard, the Supreme Court

---

[21] Docket No. 1 at 29-30.

[22] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[23] *Id*.

[24] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[25] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the

has explained that, if the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.[26]   The Supreme Court has also

indicated that "outcome determination" is measured at each critical stage of a criminal

proceeding, including pre-trial matters, and is not necessarily limited to whether the overall trial

itself is fair; i.e., the otherwise fair trial must have "cured the particular error at issue."[27]   An

ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient

showing under either one of the *Strickland* prongs.[28]

    *Strickland* and its progeny do not mandate that this Court act as a "Monday morning

quarterback" in reviewing tactical decisions.[29]   Indeed, the Supreme Court admonished in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense after
> it has proved unsuccessful, to conclude that a particular act or omission of counsel
> was unreasonable.  A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the defendant

---

effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged
conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not
implicated." (citations omitted)).

    [26] *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531
U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393.

    [27] *See, e.g., Lafler*, 132 S. Ct. at 1385-86 (ineffective assistance of counsel during plea
bargaining).

    [28] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and
need not address both prongs if the defendant fails on one).

    [29] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[30]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[31]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[32]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[33]

Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it

---

[30] 466 U.S. at 689 (internal citations and quotation marks omitted).

[31] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[32] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[33] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[34]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[35] "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."[36] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[37]

Bryson bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[38] "[Bryson] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[39] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[40] "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions,

---

[34] *Id.* at 786.

[35] *Morrison*, 477 U.S. at 382.

[36] *Richter*, 131 S.Ct. at 791 (internal quotation marks and citation omitted).

[37] *Morrison*, 477 U.S. at 382.

[38] *Strickland*, 466 U.S. at 689.

[39] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[40] *Id.* (quoting *Strickland*, 466 U.S. at 689).

13

strategic choices must be respected in these circumstances if they are based on professional judgment."[41]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[42]  The court must then consider those acts or omissions against "prevailing professional norms."[43]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[44]

The United States Supreme Court has said that counsel need not undertake exhaustive investigation.  The question is not "what is prudent or appropriate, but only what is constitutionally compelled."[45]  While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[46]  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[47]  The Supreme Court has never, however, explained

_____

[41] *Strickland*, 466 U.S. at 681.

[42] *Id*. at 690.

[43] *Id*.

[44] *Id*.

[45] *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

[46] *Strickland*, 466 U.S. at 690.

[47] *Id*. at 690-91.

14

what amount of investigation is sufficient.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[48]

Bryson has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  Bryson presented no alternate attorney's determination challenging counsel's strategy or tactics.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[49]  He has not identified what the testimony of the experts would have been or how that testimony might have affected the outcome.

His argument as to the failure to move to exclude the allegedly "contaminated" photograph allegedly seized at the time of Bryson's arrest was simply a question of the chain of evidence.  Normally, gaps in the chain of the evidence go to its weight, not its admissibility.[50] There is a difference, however, when the challenge to discrepancies in the chain of the evidence is on admissibility grounds rather than weight in that, in the former, the prosecution must introduce sufficient evidence to establish that the item(s) to be admitted are in substantially the same condition as when seized.[51]   Bryson does not allege, let alone provide any factual basis, for

---

[48] *Id.* at 691.

[49] *Id.* at 688.

[50] *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009).

[51] *See, e,g., United States v. Solorio*, 669 F.3d 943, 954 n.13 (9th Cir. 2012).

a finding that the photograph in question was not in the same condition as it was when it was seized.

With respect to his claim *vis-a-vis* the shoes, the question is somewhat different.  There, Bryson argues that the photographs of the shoes, ostensibly taken at the time they were seized, showed the shoes were not in the same condition as when introduced at trial, i.e., at the time of trial they appeared to have picked up something on the sole that was not in the picture.  Bryson also argues that at the time of trial they were covered with a "copious quantity of mud and grass" that was neither shown in the photo nor noted on the police report.  Bryson further argues he did not recall the shoes having mud or grass on them.  The insurmountable problem Bryson faces is that, based upon the record before, it cannot be definitively determined that the shoes were not in substantially the same condition when introduced into evidence as when seized.  Furthermore, Bryson has not alleged that the shoes were not his, nor has he made any showing that the admission of the shoes into evidence somehow prejudiced him, i.e., the outcome would have been different.

In short, Bryson has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*.  This Court cannot say that the decision of the Yolo County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[52]  Nor, viewing the matter through the doubly-

---

[52] 28 U.S.C. § 2254(d).

deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Bryson's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable. Bryson has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*.  Bryson is not entitled to relief under his first, second, or third grounds.

Ground 4:  Sufficiency of the Evidence

Bryson contends that there was insufficient evidence to support his conviction on the two counts of assault with the intent to commit rape.  The California Court of Appeal, after discussing the evidence and Bryson's contentions, disagreed:

> *Sufficiency of the Evidence of Assault with Intent to Commit Rape*
> [Bryson] contends his two convictions of assault with intent to rape must be reversed because there was insufficient evidence of specific intent to rape.  We disagree.
> "On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt.  [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns.  [Citations.]  [¶]  While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the prosecution, and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.]  Issues of witness credibility are for the jury.  [Citations.]"  (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)
> "The crime of which [[Bryson]] was convicted, assault with intent to commit rape, requires proof that he intended to have sexual intercourse with [the victim] and to use force to overcome her resistance. [Citation.]"  (*People v. Craig* (1994) 25 Cal. App. 4th 1593, 1597.)  "'Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence.

17

[Citations.]'"  (*People v. Sanghera* (2006) 139 Cal. App. 4th 1567, 1574, quoting *People v. Kwok* (1998) 63 Cal. App. 4th 1236, 1245.)

In this matter, the evidence was sufficient to prove that [Bryson] intended to have sexual intercourse with A.N. and to use force to overcome her resistance.  After he broke into her apartment in the early morning, he entered her bedroom and she spoke to him, believing he was a roommate's friend.  Despite almost being caught inside the apartment, [Bryson] reentered hours later and returned to A.N.'s room.  Again, A.N. mistook [Bryson] for a roommate's boyfriend and asked him if he had received her rent check.  After responding in the affirmative, he placed one hand on the clothing that covered A.N.'s left breast and placed his other hand on the clothing covering her vagina.  He rubbed those portions of her body for 30 to 40 seconds.  Only when A.N. screamed did [Bryson] run out of the apartment.

Reasonable jurors could infer that, having twice risked getting caught in the apartment and having twice singled out the same victim whose ability to identify him grew with each encounter, [Bryson] intended to persist in his efforts to accomplish an act of sexual intercourse.  The jurors also could reasonably infer that his efforts included using physical force necessary to overcome his victim's resistance.  The fact that [Bryson] responded to A.N.'s scream for help by running for safety, rather than applying the force needed to complete the sexual act, does not mean that the proof of intent to use force was insufficient.  (Cf. *People v. Craig, supra,* 25 Cal.App.4th at p. 1596.)

Similarly, reasonable jurors could find the evidence sufficient to prove that [Bryson] intended to complete an act of sexual intercourse and did not intend merely to massage A.N.'s breast and vagina.  A reasonable inference can be drawn that [Bryson] would have continued to pursue an act of sexual intercourse by force if necessary, had he not been interrupted by A.N.'s screams.  (*People v. Craig, supra,* 25 Cal. App. 4th at p. 1600.)  The fact the evidence could also support a contrary inference does not require reversal of the judgment.  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1213.)

[Bryson]'s assault of K.M. involved greater force than his assault of A.N. He jumped on top of K.M., straddled her waist, and held her arms down.  K.M. yelled, and she punched and kicked [Bryson].  He continued to grab her and tried to hold her down.  After a 30-second struggle, she got her knees up and kicked him off the bed.  Although he evidently did not fondle K.M. as he had A.N., reasonable jurors could conclude from these facts that he intended first to take physical control of K.M. and then to engage in sexual acts including intercourse with his fortuitously naked victim.

This court recently explained that an appellant "must *affirmatively demonstrate* that the evidence is insufficient," and that he "does not show the evidence is insufficient by . . . arguing about what evidence is *not* in the record."  (*People v. Sanghera, supra,* 139 Cal. App. 4th at p. 1573.)  Here, however, [Bryson's] argument is limited to a recitation of evidence that was *not* produced:  no evidence that he made a statement of intent to rape, no evidence that he took his penis out of his pants, no evidence of a prior rape, no evidence that he had condoms, no evidence that he tried to undress A.N., and, although he had climbed on top of

K.M. and straddled her, no evidence that he had touched K.M. in a sexual manner. But the lack of this evidence does not negate the sufficiency of the evidence on counts 1 and 8. (*Ibid.*).[53]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[54]  This Court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[55]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[56]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[57]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[58]  This Court must also

---

[53] *Bryson*, 2009 WL 1153273 at *4-5.

[54] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[55] *Jackson*, 443 U.S. at 318-19.

[56] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[57] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[58] *Jackson*, 443 U.S. at 324 n. 16.

be ever mindful of the deference owed to the trier of fact and the sharply limited nature of

constitutional sufficiency review.[59]   A fundamental principle of our federal system is "that a state

court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."[60]   A determination of state law by a

state intermediate appellate court is also binding in a federal habeas action.[61]   This is especially

true where the highest court in the state has denied review of the lower court's decision.[62]

"[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited

to whether the error 'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'"[63]   "Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension."[64]   It is

through this lens that this Court must view an insufficiency of the evidence claim.

---

[59] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[60] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[61] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[62] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[63] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[64] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

Bryson misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction.[65]  In this case, the California Court of Appeal determined that there was sufficient evidence of each element of the crime of assault with the intent to rape as defined by California law to support Bryson's conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[66]  Bryson bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[67] a burden Bryson has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.  Bryson is not entitled to relief under his fourth ground.

Grounds 5 and 6:  Improper Jury Instructions

In his fifth ground Bryson contends that the trial court erred giving CALCRIM No. 376 on possession of recently stolen property, claiming that it reduced the prosecution's burden of proof below that of beyond a reasonable doubt.  After discussing the instruction and its applicability, the Court of Appeal held:

> Thus, CALCRIM No. 376 pertained, at most, to the three charged counts of first degree burglary.  (Counts 2, 9, & 10.)   [Bryson] was acquitted of count 10.  In

---

[65] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[66] *See Jackson*, 443 U.S. at 326.

[67] 28 U.S.C. § 2254(e)(1).

part II, *ante,* we concluded that counts 2 and 9 must be reversed as lesser included offenses of counts 1 and 8.  Any error with respect to CALCRIM No. 376 is therefore moot.[68]

Bryson advances the same arguments before this Court as he did on direct appeal.  Bryson does not address the determination by the California Court of Appeal that this issue was moot. Because he does not do so and it is essentially an issue of state law, this Court has no reason to review that decision.  Bryson is not entitled to relief under his fifth ground.

In his sixth ground, Bryson argues that the jury failed to properly instruct the jury on the element of specific intent with respect to the two assault with the intent to rape charges, i.e., although they refer to "willfully," the instructions do not mention the word intent or specific intent.  The Court of Appeal rejected Bryson's argument on direct appeal:

> [Bryson] contends the trial court erroneously instructed the jury on the specific intent required to prove assault with the intent to commit rape.  Specifically, he claims CALCRIM No. 890 on assault with intent to commit rape "did *not* explain the specific intent necessary for conviction of that offense, i.e., the specific intent to have sexual intercourse against the victim's will."  Instead, the instruction simply told the jury that [Bryson] must have acted willfully.  We disagree.
>
> "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."' [Citations.]' [Citation.]"  (*People v. Smithey* (1999) 20 Cal.4th 936, 963-964.)
>
> The trial court instructed the jury with CALCRIM No. 252 on specific intent, CALCRIM No. 890 on assault with intent to commit a sex offense, and CALCRIM No. 1000 on rape.  CALCRIM No. 252 told the jury in relevant part:  "The crimes charged in Count 1 through 11 require proof of the union, or joint operation, of act and wrongful intent.  [¶] . . . [¶]  The following crimes require a specific intent or mental state: . . . assault with intent to commit rape charged in Counts 1 and 8 . . . . For you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must but [*sic*] do so with the specific intent and/or mental state.  The act and the specific intent and/or mental state required are explained in the instruction for that crime."

---

[68] *Bryson*, 2009 WL 1153273 at *7.

CALCRIM No. 890 told the jury in relevant part: "The defendant is charged in Counts 1 and 8 with assault with intent to commit rape in violation of Penal Code Section 220. [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1.  The defendant did an act that by its nature would directly and probably result in the application of force to a person;  [¶]  2.  The defendant did that act willfully;  [¶]  3.  When the defendant acted, he was aware of facts that would led [*sic*] a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;  [¶]  4.  When the defendant acted, he had the present ability to apply force to a person;  [¶]  5.  When the defendant acted, he intended to commit rape; [¶] AND [¶]  6.  The assault with intent to commit rape occurred during the commission of a burglary and [*sic*] degree.  [¶] . . . [¶]  To decide whether the defendant intended to commit rape, please, refer to Instruction 1000 which defines that crime."

Finally, CALCRIM No. 1000 told the jury in relevant part: "The defendant is charged in Counts 1 and 8 with assault with intent to commit rape.  The elements for rape are set forth below.  The defendant is not charged with committing rape.  Thus, the elements of rape are listed to assist you in deciding whether the defendant assaulted the victim with intent to commit rape.  [¶]  The elements of rape are:  [¶] 1.  The defendant had sexual intercourse with a woman;  [¶]  2.  He and the woman were not married at the time of the intercourse, the woman did not consent to the intercourse, and the defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else.  [¶] . . . [¶]  To consent, a woman must act freely and voluntarily and know the nature of the act.  [¶]  Intercourse is accomplished by force if a person used enough physical force to overcome the woman's will."

As can be seen, CALCRIM No. 252 told the jury that counts 1 and 8 required a specific intent, and that the specific intent required for those counts would be explained in the instruction for those crimes.

CALCRIM No. 890 told the jury that, in order to prove that [Bryson] was guilty of counts 1 and 8, the People had to prove, among other things, that "[w]hen the defendant acted, he intended to commit rape."  This instruction also advised the jury, "[t]o decide whether the defendant intended to commit rape, please refer to Instruction 1000 which defines that crime."

CALCRIM No. 1000 told the jury that [Bryson] was not charged with rape and that the elements of rape were listed in order to assist the jury in deciding whether the [Bryson] assaulted the victims with the intent to commit rape.  This instruction advised the jury that rape requires unconsented sexual intercourse by force, violence, duress, menace, or fear.

[Bryson] argues that, contrary to the Attorney General's claim, "no instruction told the jury that, in order to find [him] guilty of the section 220 charges, 'he needed to have the specific intent to commit rape.'"  We disagree.  Although CALCRIM No. 890 did not label the requisite intent "specific," a label lay jurors are not expected to understand, the instruction plainly told the jury that [Bryson] must have "intended to commit rape."  That was sufficient.

In their entirety, the instructions told the jury that counts 1 and 8 required specific intent; that the People must prove that when [Bryson] acted, he intended to commit rape; and that rape consists of sexual intercourse to which the victim did not consent.  There was no error.  (*People v. Smithey, supra,* 20 Cal.4th at pp. 963-964.).[69]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[70]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[71]  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.[72]

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[73]  In this case the California Court of Appeal, after thoroughly reviewing the instructions as a whole, determined that the jury was correctly and adequately instructed as to the element of the intent necessary to establish the crime of assault with the intent to commit rape as defined by California law.  This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[69] *Bryson*, 2009 WL 1153273 at *7-9.

[70] *Boyde v. California,* 494 U.S. 370, 380 (1990).

[71] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[72] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Franklin*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

[73] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[74]   Bryson is not entitled to relief under his sixth ground.

Ground 7:  Failure to Stay the Sentence on Count 4 (Possession of Cocaine for Sale)

Bryson was sentenced  to a three-year prison term for count 4 (possession of cocaine for sale) and a concurrent five-year term for count 5 (transportation of cocaine).  Bryson contends that, because both counts arose out of the same act, his sentence under count 4 should have been stayed under Cal. Penal Code § 654.  After reviewing the facts presented, the California Court of Appeal rejected this argument.

> [Bryson's] argument overlooks the fact that the trial court, not the jury, was the factfinder as to the applicability of section 654.  The court's decision rests on the evidence presented at trial rather than upon the implied findings of the jury.  The fact the jury unanimously concluded that [Bryson] possessed other cocaine in the car does not allow him to escape responsibility for the cocaine in the house.  No unanimity instruction was required.[75]

Respondent argues that this ground presents purely a question of state law, not cognizable in this Court.  This Court agrees.  To the extent that Bryson argues that the trial court violated California law, that argument is beyond the purview of this Court in a federal habeas proceeding.[76]  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[77]  A fundamental principle of our federal

---

[74] 28 U.S.C. § 2254(d).

[75] *Bryson*, 2009 WL 1153273 at *10.

[76] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[77] *See McGuire*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990)

system is "that a state court's interpretation of state law, including one announced on direct

appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[78]  A federal

court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state

supreme court's interpretation of the law.[79]  A determination of state law by a state intermediate

appellate court is also binding in a federal habeas action.[80]  This is especially true where, as here,

the highest court in the state has denied review of the lower court's decision.[81]  Bryson is not

entitled to relief under his seventh ground.

_____

(it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Isaac*, 456 U.S. at 119 (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[78] *Bradshaw,* 546 U.S. at 76; *see West*, 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[79] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[80] *See Feiock,* 485 U.S. at 629-30 & n.3 (noting state appellate court's determination of state law is binding and must be given deference).

[81] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

## V.  CONCLUSION AND ORDER

Bryson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[82]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[83]

The Clerk of the Court is to enter judgment accordingly.

Dated:  October 12, 2012.

                                    /s/ James K. Singleton, Jr.
                                    JAMES K. SINGLETON, JR.
                                    United States District Judge

---

[82] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[83] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.